In the Matter of the Claims of KENNETH WEIS et al. and Other Claimants Similarly Situated, Respondents. MARTIN P. CATHERWOOD, as Industrial Commissioner, Respondent; GENERAL MOTORS CORPORATION, Appellant.

In the Matter of the Claims of RICHARD W. JONES et al. and Other Claimants Similarly Situated, Respondents. MARTIN P. CATHERWOOD, as Industrial Commissioner, Respondent; GENERAL MOTORS CORPORATION, Appellant.

Third Department, November 21, 1966.

*Raichle, Moore, Banning & Weiss* (*Arnold Weiss* of counsel), for appellant.

*Lipsitz, Green, Fahringer, Roll, Schuller & James* (*Richard Lipsitz* of counsel), for claimants-respondents.

AULISI, J. These are appeals by the employer from decisions of the Unemployment Insurance Appeal Board awarding claimants unemployment benefits.

The claims for benefits resulted from unemployment connected with a Nationwide United Automobile Workers' strike in 1964 affecting some 130 of appellant's industrial plants. In 89 of these plants the union instructed its members to strike on September 25, 1964. In the 41 other plants, some of which were producing parts sold to appellant's competitors, the union members were requested to stay on the job in order that continuing competition could be maintained thus putting additional pressure upon appellant. Of the five plants or establishments with which we are concerned on this appeal four of them produced parts for competitors and so were not struck (Harrison Radiator Division in Buffalo, Harrison Radiator Division in

Lockport, Rochester Products Division and Ternstedt-Syracuse Division). However, employees were laid off at various times from these four plants beginning in early October because of production problems created by the strikes going on at the 89 other plants. These claimants have been given benefits from the times they were laid off rather than at the time the collective bargaining agreements were ratified at their particular establishments. A strike was called at the fifth plant with which we are concerned, Chevrolet-Tonawanda Division, and benefits were awarded to claimants from that establishment beginning October 26, 1964, the date when a settlement was ratified, when picketing ceased and when the movement to get the plant back into operation was begun. Days of unemployment accrued, however, because of the gradual process of getting the plant back into full production.

As to the Chevrolet-Tonawanda claimants who struck and who were awarded benefits for days of unemployment accruing after the settlement at their establishment, we can perceive no reason to depart from the clear and applicable precedent afforded in *Matter of George (Catherwood)* (14 N Y 2d 234) and *Matter of Acquisto (Catherwood)* (25 A D 2d 326, mot. for lv. to app. den. 18 N Y 2d 577). Appellant's contention that the 1964 strike was truly a national strike whereas the 1961 and 1958 strikes were a series of local strikes seems irrelevant where as here, we are confined to an appraisal of the situation as it occurred at each establishment. Therefore, if the strike is settled at the establishment, but unemployment continues because of continuing strikes at other establishments of an integrated industrial empire (*Matter of George, supra*) or because of the problems of gradually resuming production in that establishment (*Matter of Acquisto, supra*), benefits are not barred by subdivision 1 of section 592 of the Labor Law. The industrial controversy at that establishment had ceased. Whether the strike was truly a national strike concerning only national issues, or a series of local strikes co-ordinated by the international union involving local and national issues, are factors which really do not bear on the establishment question as set forth by the Court of Appeals in *Matter of George (supra)* and *Matter of Ferrara (Catherwood)* (10 N Y 2d 1). So, too, it is the establishment concept which renders appellant's " constitutional " arguments, developed in its reply brief, without any basis grounded as they are on the contention that a true Nationwide strike somehow changes the situation within the various establishments. Appellant's further argument, with respect to ratification dates, that the October 25 termination (and October 26 ratification) was so

qualified as to provide no secure settlement at all, is academic in view of the fact that that settlement did, in fact, prove to be a lasting one.

Concerning the four establishments where claimants stayed on the job, but were laid off, appellant argues that even if we are to confirm benefit payments for days of unemployment after the various settlement dates, there are no grounds for allowing benefits for days of unemployment occurring between the times of the layoffs and the settlement dates. It is contended that there were still industrial controversies in those establishments; collective bargaining was continuing; and the decision to keep these workers on the job was just as much a part of the union's strategy as calling strikes in other establishments. We cannot accept these arguments. Subdivision 1 of section 592 of the Labor Law bars benefits only when a claimant loses employment because of an industrial controversy "in the establishment in which he was employed". The proof here is that the layoffs were caused by the strikes at other establishments thus bringing to a halt the industrial flow in this integrated system. We are not persuaded that the collective bargaining process in any of these four plants can be said to have constituted an industrial controversy as that terminology is used in subdivision 1 of section 592. Collective bargaining can be carried on while a prior contract is still in effect and thereafter with no loss of employment resulting from this process. In 89 of appellant's plants in 1964 the union created industrial controversies by striking before pursuing further collective bargaining negotiations. In the 41 others, including these four, the union chose to pursue collective bargaining without creating an industrial controversy. That this may have been part of the union's overall strike strategy does not change our conclusion in view of the pertinent statutory and case law hereinabove set forth. These claimants were laid off as a result of strikes at other establishments; they did not strike nor was there an industrial controversy in their establishments. *Matter of Vingoe (Bethlehem Steel Co.)* (285 App. Div. 160), relied upon by appellant is inapplicable here, since in that case, even though a strike was forestalled, there was an industrial controversy in the subject establishment and the layoffs were due to plant conditions caused by that controversy and not, as here, by controversies at other establishments.

The decisions should be affirmed.

GIBSON, P. J., HERLIHY, REYNOLDS and STALEY, JR., JJ., concur.

Decisions affirmed, with costs.